By the Court—Bosworth, Ch. J.
There are some facts established by testimony in no way conflicting. On the 21st of October, 1856, the plaintiffs and Theo. Perry & Co. entered into a valid contract, by which the former agreed to sell and the latter to purchase 3,921 bushels of wheat per boat D. Hibbard, and 3,500 per boat Ural, at $1.54 per 60 pounds, to be “ delivered to vessel in good shipping condition,” to be paid for in cash on delivery.
The vessel Compromise was designated as the one into which delivery of the wheat was to be made. On the 22d, the wheat was measured from the Ural into the Compromise, and on the morning of the 23d the measurer’s return, with a bill of the wheat dated the 21st, stating the quantity sold, “ as per returns,” to be 3,499 bushels, 30 pounds and 12 ounces weight, and the price at $1.54 per bushel, to be $5,389.25, and the charges for one-half measuring and screening to be $11.04, was sent to the purchasers.
Subsequently, and on the same day, one of the plaintiffs (Wm. R. Sheldon) met Perry on the Corn Exchange, and requested a check for the amount of this bill. Perry said he would pay on Saturday. The 23d was Thursday.
Sheldon does not state that he made any objection to this, or suggested that it would not be satisfactory.
On these few uncontroverted facts, it cannot be doubted, as we think, that Theo. Perry & Co. then had all the actual possession it was ever contemplated they would have, nor that they then had the full possession, and in the precise manner, that the contract between them and the plaintiffs contemplated that full *140 performance by the plaintiffs would give. There was a perfect delivery of the wheat which had been measured into the Compromise in pursuance of the contract between the parties, in such sense, that its subsequent loss by perils of the seas, or other casualty,, would have been the loss of Theo. Perry & Co. Notwithstanding a subsequent loss of it, without the fault of either party, a tender of the balance would have enabled the plaintiffs, as a matter of right, to recover of Theo. Perry & Co. the contract price of the whole.
The most the plaintiffs can claim is, that although there was such a delivery made as satisfied the contract and fully performed it on their part, yet the delivery was conditional in such sense, that, if on delivering the balance, Theo. Perry & Co. refused or became unable to pay for the whole, the plaintiffs, as between themselves and Theo. Perry & Co., could have repossessed themselves of the wheat.
If this be so, the next important question is, did the transactions between Perry and Francis McDonald & Co. confer upon the latter a lien or title superior to the title of the plaintiffs.
We think it must be conceded that the purchase and possession by Perry were such as to enable him to confer upon a bona fide purchaser or pledgee for value, a title valid as against the plaintiffs. (Smith v. Lynes, 1 Seld., 41.)
The Judge instructed the jury that there was “not sufficient evidence that the purchase of the wheat by Perry was fraudulent.” It is the right of the defendants to have that instruction treated, for all the purposes of the present appeal, as correct.
The advance of the $5,000 made to Perry by Francis McDonald & Co., was made on the 23d, before 12 o’clock. It is not an unreasonable inference, from the testimony, that this advance was sought and made after the measurer’s return and the bill annexed to it had been delivered by the plaintiffs to Theodore Perry & Co.
Nor is it an unreasonable inference that this advance was sought and made on the understanding, (at the time it was made,) between Theodore Perry & Co. and Francis McDonald & Co., that it was made on the security of the wheat in question; and that the wheat was at the time of the advance pledged as security for the repayment of the money, so far as that result could be *141 effected, by a clear understanding that Francis McDonald & Co. should have the control of it thenceforth, and a delivery to them of the measurer’s return, and a bill of lading issued by the master stating Francis McDonald & Co. to be the shippérs of the wheat, and that it was to be delivered at Glasgow to their order, to the end that it might be sold by their house there to reim-. burse them for this and other advances, and by the execution of that understanding on the following morning, by the actual delivery of the measurer’s return and the contemplated bill of lading.
If Perry had paid the plaintiffs on the morning of the 23d for this wheat in full, at the time he was requested so to do, at the Corn Exchange, nothing more could have been done according to the usual course of business, so far as the evidence discloses what that was, than was done, to vest in Francis McDonald & Co. the legal title to the wheat, or to confer upon them the actual and legal control over it.
If the transaction was understood at the time of the advance, and was then intended to be such as is above suggested, then Francis McDonald & Co.’s right of possession and to control the wheat was perfect, as between them and Perry, had he been the absolute owner.
A transaction which would, had he been the absolute owner, have divested him of all right of possession and to control it, must have the same effect as against the plaintiffs, if the advance was made bond fide and in the actual belief that Perry was the owner, followed as it was, almost cotemporaneously, with the execution and delivery of all the muniments and evidences of title that were adapted to the subject matter of the contract, situated as the wheat in question was, at the time the advance was made.
The charge of the Judge submitted no question of fact to the jury and was, in substance, an instruction to find for the plaintiffs, and was excepted to by the defendants on that ground.
We think there was sufficient evidence to justify the submission of the question whether the advance was made in good faith and upon the security of the wheat in question, and upon the understanding at the time that it should be thenceforward subject to the control and direction of Francis McDonald & Co., and that *142 a bill of lading should be procured and delivered to them as the shippers, which by its terms should make the wheat deliverable at Glasgow to their order.
And they were entitled to the instruction, that if the jury found the affirmative of that proposition, the defendants were entitled to a verdict.
Evidence was admitted “ subject to the objection ” of the plaintiffs, “ and without prejudice to the plaintiffs’ objection as to its legal effect,” that it was the usage in the city of Eew York, in October, 1856, to issue bills of lading to the person producing the measurer’s return of grain shipped in bulk.
With what view it was admitted, the case does not clearly disclose. It is quite clear .that no evidence was given which could have the effect to make the measurer’s return operate to transfer the legal title to the wheat, to every holder of it by reason and force of his mere possession of it.
The only plausible ground, if any, for admitting evidence of the practice,, is its bearing upon the question of the good faith of Francis McDonald & Co., so far as any light could be thrown upon that question, by proving that their transactions were according to the ordinary and usual course of business. ' But the case presented no such question, and the evidence seems to be irrelevant. As, however, the plaintiff obtained a verdict, this question does not properly arise on the defendants’ appeal.
Evidence of other purchases made by Perry in October, 1856, was admitted against the objection and exception of the defendants. The evidence must have been offered and received as competent evidence, upon the question whether the wheat in question was purchased with a preconceived intent not to pay for it.
Eeither the evidence of Van Syckel, Averill, or Whittlesey, tended to prove any fraudulent intent in making the purchases of which they testified, or making the purchase of the wheat in question. (Hall v. Naylor, 6 Duer, 71; S. C., in the Court of Appeals, 18 N. Y. R., 588.)
The judgment and order appealed from, must be reversed and a new trial granted, with costs to abide the event.
Ordered accordingly.